EHRLICH, Justice.
We have for our review Brown v. Davis, 493 So.2d 523 (Fla. 1st DCA 1986), wherein the district court certified the following question of great public importance:
CAN A COURT, IN EQUITY, ORDER EXCHANGE OF DEEDS OF TWO LOTS WHEN THE OWNER OF ONE LOT MISTAKENLY CONSTRUCTS ON THE ADJACENT LOT OF THE OTHER OWNER?
Id. at 525. We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and answer the question in the affirmative with the proviso that an order to exchange deeds must be entered only as a last resort when there is no other equitable remedy possible. Because we find the trial court’s order sub judice comports with this standard, we approve the decision of the district court below.
The facts of this controversy center on two adjacent pieces of real property, tract 16 and tract 17, located in an unplatted subdivision known as Karen Acres. Karen Acres was originally owned by one Jesse who divided the entire parcel of land into twenty-five two and one half acre tracts. A Mr. Roth purchased tracts 16 and 17 in 1974, and subsequently sold tract 17 to Brown, the petitioner herein. The adjacent parcel, tract 16, was sold to the Demmons in 1977. Tracts 16 and 17 were originally identical in size, but the Demmons divided tract 16 into two smaller parcels. They hired the respondent surveyor, Wilkinson, to make the division but he apparently erroneously divided tract 17 instead of 16.[1] One part of tract 16 was subsequently sold to the respondents Pruetts and the other to the respondent Davis. In 1980 the Pruetts obtained an FHA loan to construct a brick home on their portion of tract 16; because of the erroneous survey, however, the house was mistakenly built on tract 17, owned by Brown. After the house was completed but before they could move in, the Pruetts were transferred from the area. Davis bought the house and land from the Pruetts and assumed their FHA loan. Brown testified below that although she is now employed as a nurse, at the time she purchased tract 17 she was a real estate broker and purchased tract 17 as an investment. She further testified that since purchasing tract 17, she had at one time unsuccessfully attempted to sell the property. Brown also testified that she made an annual visit to the property, but *56 “skipped a year in there” and consequently was unaware of the existence of Davis’ house on her property until Davis so informed her in April 1981.
Brown then instituted ejectment proceedings against Davis seeking possession of the property and damages. Davis responded and counterclaimed, seeking either 1) an equitable exchange of the tracts; 2) “betterment” pursuant to section 66.061, Florida Statutes; 3) an equitable lien against Brown’s property; or 4) removal of the home from Brown’s property. Davis also filed third-party complaints against the Pruetts, the Demmons, Wilkinson, a title insurance company, and the United States Government as holder of the FHA loan.[2]
After considering all the evidence presented at the trial, the trial court ordered an equitable exchange of tracts between Brown and Davis, the transfer of the FHA loan on tract 16 to tract 17, a similar transfer of a bank’s lien on tract 16, and entry of a judgment of $500 in damages and $544.65 in costs for Brown and against the surveyor Wilkinson. Brown was disallowed a $792.50 expense incurred for a topographical survey which was introduced into evidence at trial.
The district court affirmed the trial court’s order of the equitable exchange of tracts. The district court remanded however for modification of the final judgment in several respects[3] and certified the question now before us.
The district court’s affirmance of the equitable exchange of deeds was based on this Court’s prior decision of Voss v. Forgue, 84 So.2d 563 (Fla.1956). Judge Zehmer, in dissent below, expressed the following concern:
Ordering one to divest himself of land he owns in exchange for an unwanted tract is such an extraordinary remedy that it should only be applied as a last resort when none of the foregoing alternatives are feasible.
493 So.2d at 528. In our answer to the certified question, we have agreed with Judge Zehmer that ordering an equitable exchange of deeds must be a last resort measure. We find that the trial court’s order below was premised on his finding that, based on all the facts presented, an exchange of deeds was the only equitable remedy possible.
We emphasize that the law does consider each parcel of land unique. The point at issue here, however, is whether under any circumstances a court of equity can order two “innocent” parties[4] to exchange land. *57 The answer is that when there are no other adequate remedies, a court of equity may order an exchange.
Such a situation was presented to this Court in Foss v. Forgue. Porgue purchased platted subdivision lots number 14 and 15; Voss owned adjacent lot number 16. Forgue mistakenly commenced construction on lot 16. Porgue then discovered his mistake and tried to purchase lot 16 from Voss; Porgue continued construction until ordered to stop by Voss. Forgue then filed a suit in equity, alleging the mistake and asked that either Voss be required to purchase the improvements at a fair value, or that Voss convey lot 16 to him at its reasonable value. 84 So.2d at 563. Voss denied the allegations and asked that he be awarded the improvements without compensation to Forgue or, alternatively, that Porgue be required to remove the improvements from his property. Id. at 564. The trial court ordered Voss and Porgue to exchange lots. This Court discussed the different lines of thought on such a remedy, and observed that “equitable considerations have generally controlled the disposition of such cases.” Id. We affirmed the trial court’s order, stating:
In this case appellee was notified after more than a month that he was building on land that belonged to appellant but at the time he had hundreds of dollars worth of material on the land and the building was near completion at a cost of $8,500 to $11,000 as found by the chancellor. The chancellor also found that Lots 15 and 16 were of substantially the same value, that they were adjacent, that appellee was innocent of wrongdoing and that he should not be required to forfeit his expenditure. There is no contention that either of the lots had any peculiar or intrinsic value. We do not approve ap-pellee’s carelessness or laxness in looking to the location of his lot but there is no showing that appellant was harmed and being so we find no good reason to reverse the chancellor.
Id. at 564-65.
At the trial below and on appeal, Brown has attempted to show that there are, in fact, intrinsic differences between her tract number 17 and Davis’ tract 16. The trial court heard testimony on the value of the tracts and any differences between them. The trial court reasonably found that these adjacent lots were both located on a uniform, sloping hill and that, other than a greater amount of foliage on tract 16 because of the clearing done for construction of the house on tract 17, they were virtually identical. The appraisal testimony showed that the slightly higher elevation of tract 17 rendered that tract worth only $100 more than tract 16. The other equitable factors considered by the trial court were the fact that Brown had purchased the tract for an investment; that the subdivision had failed to “take off” with the result that the land values in the area had not appreciated at even the average countywide level; that Brown previously had unsuccessfully attempted to sell her lot at a price even lower than was claimed sub judi-ce as the current fair market value; that Davis was uneducated and was financially unable to hire counsel and was therefore at the mercy of the court; and that Davis could not afford to pay for Brown’s lot.
Like the court in Voss, we affirm the equitable order of the trial court below. Even though forced to trade her lot, we are of the view that Brown is in substantially the same position as she was before; after the exchange tracts, she still owns the adjacent parcel of land for investment purposes and she has been awarded damages to com *58 pensate her for the slight difference in value between the two tracts. In light of the harsh consequences which Davis would suffer in the absence of an exchange, ordering Brown to exchange tracts with Davis was the only equitable remedy feasible. We agree with the district court below that in all fairness Brown should be awarded the $792.50 expended for the topographical survey. It was introduced in an attempt to show the intrinsic differences between the two parcels; although Brown did not prevail on this point, it was an important evidentiary factor in this case, and it appears inequitable to us that Brown should have to bear this cost, for she too was an innocent party in this dispute.
Accordingly, we answer the certified question in the affirmative with the proviso that an equitable exchange may be ordered only as a last resort. Because this standard was satisfied in this case we approve the decision of the district court below and remand for correction of the final judgment consistent with the points addressed herein.
It is so ordered.
MCDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

. Wilkinson a defendant below and respondent herein, responded to the third-party cross-claim complaint of the Demmons by asserting two affirmative defenses. First, Wilkinson asserted an estoppel against the Demmons based on the fact that the Demmons did not request a survey of their property, but only requested that Wilkinson divide the parcel of land which the Dem-mons personally identified as being owned by them. Second, Wilkinson alleged the Demmons cause of action was barred by the statute of limitations.

. After Davis’ pleadings were filed but prior to the trial below, counsel withdrew from his representation of Davis. Because of financial inability, Davis consequently appeared at the trial, at the proceedings before the First District Court, and before this Court without benefit of counsel.

. The district court required first, the transfer or payment therefore of the oil, gas and mineral rights retained by the Demmons; second, a similar transfer or payment from the Demmons for the undivided l/25th interest in a common recreation tract; third, requiring Davis to satisfy the |600 bank lien against tract 16 as the bank was not a party to the proceedings below; and fourth, allowing Brown to recover the $792.50 incurred for • the topographical survey. 493 So.2d at 525.. The record before this Court reflects that all except the last of these conditions have been satisfied.

. In its brief to this Court, the federal government has suggested that the trial court implicitly found Brown was not “innocent" in this affair. See, e.g., Jim Walter Homes Inc. v. Johns, 361 So.2d 825 (Fla. 1st DCA 1978). We reject this suggestion. The trial court’s overriding concern in this case was in doing equity to all the parties. This concern is evidenced in the following colloquy between the court and Brown’s counsel in response to Brown’s claim for both ejectment of Davis and possession of the house:
The Court: All the talking you’ve done now, it still sounds like you are asking the court to give your client a $39,000 windfall; is that true?
Counsel: Yes sir.
The Court: Are you doing that as punitive damages?
Counsel: No, I tried to settle this case. The Court: But are you doing that as punitive damages?
******
Counsel: I’m not asking for any kind of damages. She owns the property the house is on.
******
The Court: Even if she gets her lot you say they shouldn’t be allowed to move their house off?
******
Counsel: Well, if they can show they can move it off without damaging the property then—
*57 The Court: Is that equity, Mr. Swann?
Counsel: Yes sir.
The Court: Isn't this court here to do equity?
Counsel: Yes sir.
The Court: And you think that’s equity?
Counsel: And to do equity to Mrs. Brown, too.
The Court: I understand I have an obligation to Mrs. Brown, certainly equal to or maybe superior to the rest of them because she is the innocent person. But you think that is equity?
******
Counsel: I’ve tried to settle the case. I don’t want to come in here feeling like— The Court: I’m going to tell you this up front and I want Mrs. Brown to know that it is highly unlikely that I’m going to give her a $39,000 house because I’ve got to go home and sleep at night. That don’t sound like equity to me. It just don’t.